**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ANGELA WAHAB, on behalf of herself and all others similarly situated,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>EVOLUTIONS HAIR SALON, LLC,<br><br>        *Defendant.* | Civil Action No. 1:24-cv-05641-ALC<br><br>**ORAL ARGUMENT REQUESTED** |

 

**EVOLUTIONS HAIR SALON, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**PURSUANT TO F.R.C.P. 12(b)(1) AND 12(b)(2)**

 

**THOMPSON & SKRABANEK, PLLC**
515 Madison Avenue, 31st Floor
New York, New York 10022
(646) 568-4280
*Attorneys for Defendant Evolutions Hair Salon, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ---------------------------------------------------------------- 1

STATEMENT OF FACTS--------------------------------------------------------------------- 2

LEGAL STANDARDS ------------------------------------------------------------------------ 4

ARGUMENT --------------------------------------------------------------------------------- 5

I.  THE COURT SHOULD DISMISS PLAINTIFF'S ADA CLAIM. ------------------------------------- 5

    A.  *Plaintiff Lacks Standing to Bring Her ADA Claim.* ----------------------------------------- 7

    B.  *Plaintiff's ADA Claim Is Moot Because Evolutions Hair Has Remedied Any Alleged ADA Violations.* -----------------------------------------------------------------------------13

    C.  *Plaintiff Fails to State an ADA Claim.* ---------------------------------------------------15

II.  THE COURT SHOULD DISMISS PLAINTIFF'S NEW YORK CITY HUMAN RIGHTS LAW ("NYCHRL") CLAIMS. ------------------------------------------------------------------------18

    A.  *Plaintiff's NYCHRL Claims Should Be Dismissed for the Same Reasons the Court Should Dismiss the ADA Claim.* -------------------------------------------------------------18

    B.  *The Court Should Decline to Exercise Supplemental Jurisdiction Over, and Dismiss, Plaintiff's NYCHRL Claims.* --------------------------------------------------------------18

    C.  *Plaintiff's NYCHRL Claims Should Be Dismissed for Failure to State a Claim Insofar as They Seek Civil Penalties and Punitive Damages.* -------------------------------------19

III.  THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF.------------20

IV.  PLAINTIFF'S CLAIMS SHOULD BE EQUITABLY BARRED. --------------------------------------20

CONCLUSION-----------------------------------------------------------------------------22

# TABLE OF AUTHORITIES

CASES

*Access 4 All, Inc. v. Thirty E. 30th St., LLC*,
   2006 U.S. Dist. LEXIS 96742 (S.D.N.Y. 2006) -------------------------------------------------- 6

*Adams v. 98-208 Para Realty Corp.*,
   2023 WL 5827595 (E.D.N.Y. 2023) --------------------------------------------------------------10

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011) -------------------------------------------------------------------- 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ---------------------------------------------------------------------------- 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ---------------------------------------------------------------------------- 5

*Brooks v. Vitamin World USA Corp.*,
   2021 U.S. Dist. LEXIS 197857 (E.D. Cal. 2021) ----------------------------------------------22

*Brown v. Bd. of Educ. of Topeka, Kan.*,
   349 U.S. 294 (1955) ---------------------------------------------------------------------------21

*Calcano v. Cole Haan LLC,*
   2021 WL 849434 (S.D.N.Y. 2021) -------------------------------------------------------- 13, 20

*Calcano v. Swarovski, et al.*,
   36 F.4th 68 (2d Cir. 2022) --------------------------------------------------------------------8, 17

*Camarillo v. Carrols Corporation, et al.*
   518 F3d 153 (2d Cir. 2008) --------------------------------------------------------------------17

*Cankat v. 41st Ave. Rest. Corp.*,
   2016 U.S. Dist. LEXIS 171406 (E.D.N.Y. 2016) -------------------------------------------- 6

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988) ---------------------------------------------------------------------------19

*Castillo v. Hudson Theatre, LLC*,
   412 F. Supp. 3d 447 (S.D.N.Y. 2019)----------------------------------------------------------15

*Chauca v. Abraham*,
   30 N.Y.3d 325 (2017) --------------------------------------------------------------------------20

*Del-Orden v. Bonobos, Inc.*,
   No. 17 Civ. 2744 (PAE) (S.D.N.Y. Dec. 20, 2017) -------------------------------------------------- 4, 5

*Dominguez v. Athleta LLC*,
   2021 U.S. Dist. LEXIS 44931 (S.D.N.Y. 2021) --------------------------------------------------------- 6

*Edwards v. Sequoia Fund, Inc.*,
   938 F.3d 8 (2d Cir. 2019) ------------------------------------------------------------------------------- 5

*Feltzin v. Triangle Props., #1, LLC*,
   2016 U.S. Dist. LEXIS 192861 (E.D.N.Y. 2016) ------------------------------------------------------ 7

*F.O. v. New York City Dept. of Educ.*,
   899 F. Supp. 2d 251(S.D.N.Y. 2012)-----------------------------------------------------------------15

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215, 110 S. Ct. 596 (1990)------------------------------------------------------------------ 7

*Gannon v. Yan Ping Ass'n, Inc.*,
   2023 WL 6292533 (S.D.N.Y. 2023)-------------------------------------------------------------------13

*Geldzahler v. N.Y. Med. Coll.*,
   663 F. Supp. 2d 379 (S.D.N.Y. 2009) ---------------------------------------------------------------- 5

*Genesis Healthcare Corp. v. Symczyk*,
   133 S. Ct. 1523 (2013)-------------------------------------------------------------------------------4, 14

*Giammatteo v. Newton*,
   452 Fed. App'x 24 (2d Cir. 2011) --------------------------------------------------------------------- 4

*Graves v. Finch Pruyn & Co.*,
   457 F.3d 181 (2d Cir. 2006) ----------------------------------------------------------------------- 18, 19

*Griffin v. Department of Labor Federal Credit Union*,
   912 F.3d 649 (4th Cir. 2019) --------------------------------------------------------------------------11

*Irish Lesbian & Gay Org. v. Giuliani*,
   143 F.3d 638 (2d Cir. 1998) ---------------------------------------------------------------------------14

*Harrow v. Department of Defense*,
   601 U.S. ____ (May 16, 2024) ------------------------------------------------------------------------21

*Harty v. West Point Realty, Inc.*,
   28 F.4th 435 (2d Cir. 2022)----------------------------------------------------------------------------- 8

iv

*Hecht Co. v. Bowles*,
  321 U.S. 321 (1944) ---------------------------------------------------------------------------21

*Home Ins. Co. v. American Home Prods. Corp.*,
  75 N.Y.2d 196 (1990) -------------------------------------------------------------------------20

*Jaquez v. Aqua Carpatica USA, Inc.*,
  2021 WL 3727094 (S.D.N.Y. 2021)--------------------------------------------------------------19

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) --------------------------------------------------------------------------- 7

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ------------------------------------------------------------- 4, 5, 14, 15

*Mendez v. Apple Inc.*,
   2019 WL 2611168 (S.D.N.Y. 2019)-------------------------------------------------------11, 12, 18

*Monge v. 405 Hotel, LLC*,
  2021 WL 982866 (E.D.N.Y. 2021)--------------------------------------------------------------- 8

*MS Fed. Acquisition, LLC v. U.S. Bank Nat'l Ass'n*,
  2015 U.S. Dist. LEXIS 95152 (S.D.N.Y. 2015) --------------------------------------------------20

*Murthy, Surgeon General, et al. v. Missouri, et al.*,
  603 U.S. __ (2024) --------------------------------------------------------------------------- 9

*Natural Res. Def. Council v. Johnson*,
  461 F.3d 164 (2d Cir. 2006) ------------------------------------------------------------------- 4

*Phillips v. 180 Bklyn Livingston, LLC*,
  2017 U.S. Dist. LEXIS 75154 (E.D.N.Y. 2017)---------------------------------------------------6, 19

*Shayler v. 1310 PCH LLC*,
  51 F.4th 1015 (9th Cir. 2022)------------------------------------------------------------------- 7

*Shipping Fin. Servs. Corps. v. Drakos*,
  140 F.3d 129 (2d Cir. 1998) ------------------------------------------------------------------- 4

*Spokeo, Inc. v. Robin*,
  578 U.S. 330 (2016) --------------------------------------------------------------------------- 7

*Starbucks Corp. v. McKinney, et al.*,
  602 U.S. __ (2024) ---------------------------------------------------------------------------21

v

*Suris v. Crutchfield New Media, LLC*,
  2023 WL 3792512 (E.D.N.Y. 2023) --------------------------------------------------------------------21

*Tavarez v. Moo Organic Chocolates, LLC*,
  2022 WL 3701508 (S.D.N.Y. 2022)-------------------------------------------------------------------12

*Thorne v. Cap. Music Gear LLC*,
  2024 WL 1604273 (S.D.N.Y. 2024)-------------------------------------------------------------------13

*Wahab v. White's Boots, Inc.*,
  2024 WL 3909083 (S.D.N.Y. 2024)------------------------------------------------------------1, 9, 10

*Winegard v. Golftec Intell. Prop. LLC*,
  2023 WL 3672540 (E.D.N.Y. 2023) -----------------------------------------------------------------13

*Yandow v. Kronau*,
  474 Fed. App'x. 797 (2d Cir. 2012) -----------------------------------------------------------------14

*Zinnamon v. Profound Color, LLC dba Colorit*,
  2023 WL 6882415 (S.D.N.Y. 2023)-------------------------------------------------------------------13

*Zinnamon v. Satya Jewelry II*,
  2023 WL 3511123 (S.D.N.Y. 2023)-------------------------------------------------------------------13

STATUTES

28 U.S.C. § 1367(c)(3) ------------------------------------------------------------------------------19

42 U.S.C. § 12182(a) -------------------------------------------------------------------------------- 5

Federal Rule of Civil Procedure Rule 12(b)(1) ------------------------------------------------------- 4

Federal Rule of Civil Procedure Rule 12(b)(6) ------------------------------------------------------- 5

N.Y. Exec. L. § 297(4)(c) (vi)-----------------------------------------------------------------------20

N.Y.C. Admin. Code, tit. 8, Ch. 1, § 8-127(a) ------------------------------------------------------20

Defendant Evolutions Hair Salon, LLC ("Defendant" or "Evolutions Hair") respectfully submits this Memorandum of Law in support of its motion to dismiss Plaintiff Angela Wahab's ("Plaintiff" or "Wahab") Complaint (*ECF* #1, the "*Compl.*"):

## **PRELIMINARY STATEMENT**

This lawsuit is only one of at least **67** distinct complaints filed by Plaintiff in the Southern District of New York since 2023 for alleged violations of the Americans with Disabilities Act ("ADA"). In recommending dismissal of one of these lawsuits, a court in this District recently held that the complaint at issue in that case merely offers "vague, boilerplate, and implausible allegations" that fail to adequately state a past injury. *See Wahab v. White's Boots, Inc.*, 2024 WL 3909083, at *13 (S.D.N.Y. Aug. 16, 2024). The present lawsuit is distinguishable but only in the fact that its allegations are not merely "implausible" but demonstrably false.

The Complaint should be dismissed for several reasons. First, Plaintiff has failed to plead a past or future injury-in-fact that supports Article III standing for her first claim under the ADA. Plaintiff mentions a single date on which she allegedly attempted to access Defendant's Website— May 20, 2024—and contends that due to the Website's inaccessibility, she was "unable to complete the purchase" of a specific item. *Compl.* ¶¶ 21-24. However, the item that Plaintiff alleges to have unsuccessfully attempted to purchase on the Website was not even **viewed** by **any** user on May 20, 2024, the date that Plaintiff alleges to have attempted to purchase it.

Nor can Plaintiff demonstrate a future injury that is actual or imminent. The Complaint's allegation that "Plaintiff intends to return to the Website" is not sufficiently specific. The credibility of her future injury allegation, which is unsupported by specific facts, is further undermined by the factual context and her other boiler-plate complaints alleging the same. For instance, although she claims to return to the Website, someday, to buy the Olaplex Shampoo, because she is "looking for a high-quality shampoo specifically designed to repair and maintain

1

curly hair" (*Compl.* ¶ 29), this shampoo is not specifically designed for curly hair (nor is it alleged to be so) and is readily available for her to purchase from any of the major retail shops.

Alternatively, Plaintiff's ADA claim is mooted because Evolutions Hair has remedied any alleged violations of the ADA lodged in the Complaint. The Complaint is also subject to dismissal for failure to state a claim because well before this lawsuit, Evolutions Hair's Website provided users three different avenues to obtain assistance (by text, telephone call, and contact form), as well as a dedicated Virtual Assistant readily available to resolve users' issues. Plaintiff does not allege she utilized any of these options or that she sought any accommodation, because she did not.

Plaintiff's additional claims under the New York City Human Rights Law ("NYCHRL") and her claim for declaratory relief are also subject to dismissal for lack of subject matter jurisdiction and failure to state a claim. Plaintiff's Complaint should also be equitably barred because of her failure to inform Evolutions Hair of any alleged accessibility issues prior to filing suit and her refusal to identify exactly what accessibility barrier Evolutions Hair might remove for her.

For all the foregoing reasons, this Court should dismiss Plaintiff's lawsuit in its entirety.

### STATEMENT OF FACTS

Evolutions Hair is a small hair salon that offers a variety of hair care services, including haircuts and styling to clients of all backgrounds. *See* Affidavit of Allison Bridges ("*Bridges Aff.*") ¶ 9. The salon is physically located in Babylon, New York and clients can also purchase a selection of hair products and tools through a website that is publicly available at www.curlevolution.com (hereinafter, "the Website"). *Id.* ¶ 10. Evolutions Hair makes a vast majority of product sales at its physical salon to clients who use its salon services. *Id.*

Despite being a small business, Evolutions Hair has been deeply committed to accessibility

and inclusion. The entrance to its salon is designed not to have stairs for full accessibility, and it provides people with physical disabilities reserved parking space. *Id.* ¶ 12. As a matter of policy, the salon also offers special chairs for people with different physical needs, has designated areas for wheelchair users, and for clients who require privacy for religious reasons. *Id.* ¶ 13.

Plaintiff is a New York City resident who identifies herself as "a blind, visually-impaired handicapped person." *Compl.* ¶ 17. Plaintiff does not allege any interest in visiting Defendant's salon or in Defendant's unique haircut and styling services. Rather, her Complaint asserts that she attempted to complete a purchase of a specific shampoo, "Olaplex Shampoo," *(Id.* ¶ 21) from Defendant's Website, "most recently on May 20, 2024" (*Id.* ¶ 20) and "unfortunately, [she] was unable to complete the purchase due to the inaccessibility of Defendant's Website" *Id.* ¶ 24. The Complaint asserts violations of the ADA, and the New York City Human Rights Law ("NYCHRL"), and it seeks declaratory relief, a permanent injunction, compensatory damages, and attorney's fees. *Id*. ¶¶ 66-89.

Even before Plaintiff's lawsuit, Evolutions Hair's Website possessed several features designed to accommodate users with specialized needs. Its dedicated "Contact Us" page provides users three different means of contacting Defendant with questions about accessing any products and services: a dedicated phone number for calls ("Call Us"), a dedicated phone number for text messages ("Text Us"), and a contact form to "Send Us a Message." *Bridges Aff.* ¶¶ 17-18. The Website further contains a dedicated chat box that allows users to connect with a live Virtual Assistant who stands ready to answer any of their questions. This chat box pops up on every page of the Website prompting users to direct any questions to the Virtual Assistant. *Id*. ¶ 19.

Prior to filing the lawsuit, neither Plaintiff nor her counsel ever contacted Evolutions Hair with any inquiries about any supposed difficulties in making a purchase on the Website. *Id*. ¶ 22.

Just in the past year and a half, Plaintiff has filed 67 distinct complaints in the Southern District of New York alone for alleged violations of the ADA, represented by the same law firm, which has filed more than 1,600 other website accessibility lawsuits.

**LEGAL STANDARDS**

**I.      Standard of Review for a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1).**

This Court may properly dismiss a claim for lack of subject matter jurisdiction under Fed. R. Civ. Pro. 12(b)(1), "when the district court lacks that statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Article III, § 2 of the United States Constitution limits the jurisdiction of the federal courts to matters that present actual "cases and controversies;" therefore, "an actual controversy must be extant at all stages of review." *Del-Orden v. Bonobos, Inc.*, (S.D.N.Y. Dec. 20, 2017), quoting *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis*, 1523 S. Ct. at 1528.

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 Fed. App'x 24, 27 (2d Cir. 2011), citing *Makarova,* 201 F.3d at 113. "In resolving a motion to dismiss for lack of subject matter jurisdiction, 'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'" *Del-Orden*, citing *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). But "jurisdiction must be shown affirmatively" by the plaintiff, "and that showing is not made by drawing from the pleading inferences favorable to the party asserting it." *Shipping Fin. Servs. Corps. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "[the] court may consider

4

evidence outside the pleadings, such as affidavits and exhibits." *Del-Orden*, citing *Makarova,* 201 F.3d at 113.

## II.    Standard of Review for a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 385 (S.D.N.Y. 2009) (emphasis omitted).

On the factual sufficiency prong, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of 'further factual enhancement." *Iqbal*, 556 U.S. at 677-79. *Id*. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court is not required to credit conclusory allegations or legal conclusions couched as factual allegations. *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019).

## ARGUMENT

## I.    The Court Should Dismiss Plaintiff's ADA Claim.

Title III of the ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a). Thus, to state a claim under Title III of the ADA a plaintiff must at least allege that (1) she is disabled

within the meaning of the ADA; (2) the defendant owns, leases, or operates "a place of public accommodation" within the meaning of the ADA; and (3) the defendant discriminated against her by denying her a full and equal opportunity to enjoy the products or services defendant provides. *Dominguez v. Athleta LLC*, 19 CIV. 10168, 2021 U.S. Dist. LEXIS 44931*9 (S.D.N.Y. 2021).

"The goal of the ADA is to remedy discrimination against individuals with disabilities." *Phillips v. 180 Bklyn Livingston, LLC*, 2017 U.S. Dist. LEXIS 75154, *3 (E.D.N.Y.  2017). Thus, the ADA "requires the removal of structural barriers in existing public accommodations" or the provision of alternative means of access to a facility. *Id.* A private party ADA plaintiff is limited to injunctive relief and potentially attorney's fees and costs but cannot obtain damages under the ADA. *Id.* at *3-4.

Courts across the country have raised concerns about the onslaught of serial ADA litigation, like Plaintiff's 67 recent actions in the Southern District of New York, that are intended to take advantage of the statute's attorney's fees provision to enrich lawyers rather than meaningfully remedy disability discrimination. *See, e.g., Access 4 All, Inc. v. Thirty E. 30th St.*, LLC, 04 CIV. 3683, 2006 U.S. Dist. LEXIS 96742, *34-35 (S.D.N.Y. 2006) (collecting cases), *aff'd*, 2007 U.S. Dist. LEXIS 67736 (S.D.N.Y. 2007) (adopting USMJ's report, vacating consent decree and dismissing ADA action for lack of standing); *Phillips*, 2017 U.S. Dist. LEXIS 75154, *8 (describing the "'cottage industry'" of ADA lawyers who file numerous ADA suits to extract legal fees). One district court in the Second Circuit has lamented that "[u]nfortunately, this law [the ADA] also spawned some individuals who have perverted the intentions of this statute, by filing multiple lawsuits for the ostensible purpose of obtaining attorney's fees" and that such serial ADA litigation "mock[s] the statute's mission." *Cankat v. 41st Ave. Rest. Corp.*, No. 15-CV-4963, 2016 U.S. Dist. LEXIS 171406, *1, 13 (E.D.N.Y. 2016). In addition to courts in the Second

6

Circuit, other districts have similarly bemoaned the abusive nature of these lawsuits, with the Ninth

Circuit Court of Appeals recently stating:

> The ability to file essentially the same complaints over and over again, combined with the hope of intimidating the defendant into an early settlement (or of obtaining a default judgment), allows for a quick recovery of attorney's fees with relatively minimal difficulty. *See, e.g., Molski*, 347 F. Supp. 2d at 863 (describing "cottage industry" of ADA litigants filing lawsuits "requesting damage awards" under state law "that would put many of the targeted establishments out of business" (citation omitted)); *Steven Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004) (describing ADA "shotgun litigation," where "the same plaintiffs file hundreds of lawsuits").

*Shayler v. 1310 PCH LLC*, 51 F.4th 1015 (9th Cir. 2022).

### A.    Plaintiff Lacks Standing to Bring Her ADA Claim.

To establish standing in federal court, a plaintiff must show that she suffered: (1) an injury

in fact that is "'concrete and particularized' and "actual or imminent, not conjectural or

hypothetical," (2) an injury in fact "that is fairly traceable to the challenged conduct of the

defendant," and (3) an injury in fact "that is likely to be redressable by a favorable ruling." *Spokeo,

Inc. v. Robin*, 578 U.S. 330, 338-339 (2016) (quoting, in part, *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560 (1992)). The plaintiff, as the party invoking federal jurisdiction, bears the burden of

establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107

L.Ed.2d 603 (1990). *Spokeo*, 136 S. Ct. 1540 at 1547. When the case is at the pleading stage, "the

plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547.

"Article III standing requires a concrete injury *even in the context of a statutory violation.*

For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced

from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (emphasis

added); *see also, e.g., Feltzin v. Triangle Props., #1, LLC,* 2016 U.S. Dist. LEXIS 192861

(E.D.N.Y. 2016) (relying on *Spokeo* in concluding that allegations of a violation of the ADA is

7

not sufficient to establish standing and dismissing plaintiff's ADA claim because plaintiff failed to allege facts sufficient to establish an injury).

Generally, "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S. Ct. at 1548. While particularization is necessary to establish injury-in-fact, it is not sufficient alone. An injury-in-fact must also be "concrete." *Id*. In *Spokeo*, the Supreme Court explained that, "[a] 'concrete' injury must be 'de facto' . . . that is, it must actually exist." "Concrete" has been used to convey the usual meaning of the term, such that "concrete" means "real," and not "abstract." *Id*. A plaintiff does not automatically satisfy the injury-in-fact requirement simply whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. *Id.* Article III standing requires a concrete injury, even in the context of a statutory violation. *Id*.

In the context of website accessibility, to satisfy the injury-in-act requirement, a plaintiff must show "with sufficient specificity" that her failure to access alleged goods or services resulted from the allegedly inaccessible website and the potential for future harm. *See, e.g., Harty v. West Point Realty, Inc*., 28 F.4th 435, 444 (2d Cir. 2022); *Monge v. 405 Hotel, LLC*, 2021 WL 982866 (E.D.N.Y. 2021), *report & recommendation adopted*, 2021 WL 980870 (E.D.N.Y. 2021). In *Calcano v. Swarovski, et al.*, the Second Circuit made abundantly clear that ADA website claimants who do not allege specific facts to establish likelihood of future harm will have their claims dismissed. The Court held, "[t]he central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, '**examined under the totality of all relevant facts**,' the plaintiff plausibly alleges 'a real and immediate threat of future injury.'" 36 F.4th 68, 74 (2d Cir. 2022) (emphasis added).

Recently, the United States Supreme Court held that "an abstract concern with access to some website without actual plausible interest in what the website has to offer in its goods and services belies any concrete injury." *Murthy, Surgeon General, et al. v. Missouri, et al.,* 603 U.S. __ (2024). "To obtain forward-looking relief, the plaintiffs must establish a substantial risk of future injury that is traceable to [Defendant] and likely to be redressed by an injunction against [Defendant]." *Id.*

  1.  *Plaintiff's Complaint Fails to Allege a Past Injury-In-Fact That Supports Article III Standing.*

Plaintiff has failed to sufficiently allege that she suffered a legally cognizable injury that is traceable to Defendant. Her Complaint contains the same boilerplate and conclusory allegations that are found in all the 66 other lawsuits she has filed in this District. In *Wahab v. White's Boots, Inc.*, the court conducted a close analysis of Plaintiff's 67 complaints and noted as follows:

> In all 67 complaints, Wahab alleges that she encountered the same seven access barriers on the defendant's website in language that is identical to the generic allegations in Paragraphs 43 and 44 of the Complaint here. Similarly, the allegation in Paragraph 20 that Plaintiff "encountered barriers that denied the full and equal access to defendant's online goods, content, and services" is also identical in all 67 complaints. So are the allegations in Paragraphs 26 and 28 that the defendant failed to build or provide online content or services "in a manner compatible with screen access programs" or "screen-reader technology," as a result of which Wahab was "unable to understand and properly interact with the Website."
>
> It is notable that the seven access barriers that Wahab alleges to have encountered on all 67 different websites are not the only types of barriers that impede online access by visually impaired persons. The Complaint itself—in an allegation that is also repeated, verbatim, in all 66 other complaints filed by Wahab—details seventeen "common access barriers to blind and visually-impaired persons" posed by non-compliant websites. (Compl. ¶ 36a-q). Some of these appear to overlap with the seven access barriers identified in Paragraphs 43 and 44, but many are different. Yet Wahab does not allege that she encountered or was injured by any of these other

> access barriers on any of the websites she visited—only the seven barriers identified in Paragraphs 43 and 44.

2024 WL 3909083, at *8 (S.D.N.Y. Aug. 16, 2024).

In recommending dismissal of Plaintiff's complaint, the court held that Plaintiff has failed to allege a past injury-in-fact that is concrete and particularized:

> The Complaint here fails to provide non-conclusory, plausible factual allegations of past injury under the ADA. **<u>Plaintiff provides no allegations specifying the points at which any of the seven access barriers arose while she was navigating the Website or how they prevented her from purchasing the particular boots she desired.</u>** And it would be unreasonable to infer that Plaintiff's injury in this case was caused by the seven access barriers generically identified in Paragraphs 43 and 44 when she has made the exact same allegation in 66 other cases. **<u>Under these circumstances, the Court needs more case-specific factual allegations to find that Plaintiff has met her pleading burden</u>**. See Calcano, 36 F.3d at 75 […]."

*Id* at *10 (emphasis added).

The same holding is precisely appropriate here. The Complaint copies and pastes the above-discussed "access barriers" (*Compl.* ¶¶ 44-45) and claims that "[t]hese access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do." *Id.* ¶ 46. Yet, Plaintiff does not specify how she directly encountered any one of the "access barriers" cited and how they prevented her to making a purchase. She simply fails to explain how she, **personally**, was harmed by which of the alleged "barriers" on the website. *See Adams v. 98-208 Para Realty Corp.*, 2023 WL 5827595, at **4-5 (E.D.N.Y. 2023) ("In the twenty-one alleged ADA violations, Plaintiff fails to mention any interaction with these physical barriers. (Am. Compl. ¶ 14)"). As such, the harm alleged in Plaintiff's complaint is merely conjectural and hypothetical, raising the kind of problem addressed by the Supreme Court in *Spokeo*. *See also Griffin v. Department of Labor Federal Credit Union*, 912 F.3d 649 at *653-57 (4th Cir. 2019).

This case involves additional factual evidence severely undercutting Plaintiff's only "case-specific factual allegation." Evolutions Hair's records kept in the regular course of its business clearly demonstrate that the item that Plaintiff alleges to have unsuccessfully attempted to purchase was not viewed by **any** user on the date that Plaintiff alleges to have attempted to purchase it. *See Bridges Aff.* ¶¶ 31-39. The item, "Olaplex Shampoo," was allegedly attempted to be purchased by Plaintiff on May 20, 2024, according to her. *Compl.* ¶21 ("Specifically, Plaintiff wanted to purchase Olaplex Shampoo."); ¶ 24 ("Unfortunately, Plaintiff was unable to complete the purchase due to the inaccessibility of Defendant's Website."). However, Evolutions Hair's records show that this item was **not even viewed**—let alone attempted to be purchased—by anyone on the date in question. *Bridges Aff.* ¶¶ 33-35.

Further, Plaintiff claims that she attempted to purchase Olaplex Shampoo from the Website "because she was looking for a high-quality shampoo specifically designed to repair and maintain curly hair." *Compl.* ¶ 22. In contrast the relevant shampoo is not "specifically designed" for curly hair. Instead, it is a highly popular shampoo that is widely available, marketed to, and used by people of all types of hair. The item is not a product of Evolutions Hair, and Evolutions Hair has never identified or advertised this product as being "specifically designed" for curly hair. *Bridges Aff.* ¶¶ 39-41.

> 2.   *Plaintiff's Allegations Regarding Her Intent to Return to Evolution Hair's Website are Not Credible in Context.*

The Complaint asserts that "Plaintiff intends to attempt to access the Website in the future to purchase products and services the Website offers, and more specifically the Olaplex Shampoo, if remedied." *Compl.* ¶ 29 (emphasis added). The Complaint separately alleges that "she was looking for a high-quality shampoo specifically designed to repair and maintain curly hair,"

*Compl*. ¶ 22. However, Olaplex Shampoo is not specifically designed for curly hair and is widely marketed to and used by people of all types of hair. *See Bridges Aff.* ¶¶ 39-41.

Plaintiff does not allege any facts regarding why she needs to purchase a popular shampoo that is widely available for online purchase at most retail stores specifically from Defendant's Website. She does not claim, for example, that purchasing it on Defendant's Website would be cheaper or more expedient. Nor does she allege any other advantage associated with ordering this product from Defendant.

Courts in this Circuit have held that conclusory statements such as the one included in Plaintiff's Complaint regarding intent to return do not support a reasonable inference of actual intent to return. For example, recently in *Fontanez v. Valley Lahvosh Baing Co., Inc.,* the Southern District rejected the conclusory language offered by Plaintiff as insufficient "'vague, lacking in support, and do[es] not plausibly establish that [Fontanez] 'intended to return' to the Website." *Fontanez*, 2023 WL 5390212, at *2 (internal quotation omitted). *See also Tavarez v. Moo Organic Chocolates, LLC*, 2022 WL 3701508, at *4 (S.D.N.Y. Aug. 26, 2022), *motion to certify interlocutory appeal denied*, 2022 WL 17094631 (S.D.N.Y. Nov. 21, 2022). The allegations were simply not credible and specific enough. *Id*.

Also, a mere description of Defendant's products and services (*Compl.* ¶ 23) without connecting the same to Plaintiff's specific interest in future visits to the Website is insufficient to state a future injury-in-fact. *See e.g., Thorne v. Cap. Music Gear LLC*, 2024 WL 1604273, at *4 (S.D.N.Y. 2024) (dismissing plaintiff's complaint for failure to state intent to return, noting that plaintiff "copies text from the Website but fails to include any explanation or detail about why this general statement attracted Plaintiff, or why Defendant's products or Website particularly appealed to him.").

12

Finally, the veracity of Plaintiff's claims must be considered in the full context of Plaintiff's dozens of other duplicative suits, combined with Evolutions Hair's records that undercut these core allegations. *See Cole Haan LLC,* 2021 WL 849434, at \*3 (S.D.N.Y., 2021) (plaintiff's numerous other near-identical lawsuits "undercut the sincerity of [Plaintiff's] intent to return); *Gannon v. Yan Ping Ass'n, Inc.*, 2023 WL 6292533, at \*3 (S.D.N.Y. 2023), *report and recommendation adopted*, 2023 WL 6611040 (S.D.N.Y. 2023) ("The credibility of [plaintiff's] claim is further weakened by its similarity to claims Gannon has made in other ADA cases he has brought..." citing to plaintiff's 26 other nearly identical cases); *Winegard v. Golftec Intell. Prop. LLC*, 2023 WL 3672540, at \*3 (E.D.N.Y. 2023) ("The fact that plaintiff is a serial filer (a fact easily gleaned from public records) thus bears on the plausibility of his standing claim."); *Zinnamon v. Profound Color, LLC dba Colorit*, 2023 WL 6882415, at \*1 (S.D.N.Y. 2023), *citing Zinnamon v. Satya Jewelry II*, 2023 WL 3511123 (S.D.N.Y. 2023) and Judge Caproni's Opinion and Order dated April 28, 2023, which sanctioned plaintiff's counsel for violating "Federal Rule of Civil Procedure 11(b) by filing a complaint asserting violations of the ADA in connection with a website with only "barebones, cookie-cutter" allegations that were inadequate to establish standing.").

In this context, the threadbare allegation that Plaintiff intends to return to the Website of a boutique hair salon based in Babylon, New York, to buy a generic shampoo that is readily available for purchase at major retail shops—including on Amazon—is simply not credible.

**B.      Plaintiff's ADA Claim Is Moot Because Evolutions Hair Has Remedied Any Alleged ADA Violations.**

A corollary to the "case or controversy" requirement addressed above is that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis*, 1523 S. Ct. at 1528 (2013). Absent an actual case or controversy, a claim is properly

dismissed for a lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because the district court would necessarily lack the statutory or constitutional power to adjudicate it. *Makarova,* 201 F.3d at 113. Thus, factual changes made by a defendant after litigation commences can moot a case. "The mootness doctrine is derived from the constitutional requirement that federal courts may only decide live cases or controversies." *Yandow v. Kronau*, 474 Fed. App'x. 797, 799 (2d Cir. 2012) (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998)). "A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." *Irish Lesbian & Gay Org.*, 143 F.3d at 647.

Here, despite being a small business, Evolutions Hair has invested significant resources into addressing the accessibility issues alleged by the Complaint. *Bridges Aff*. ¶¶ 43-44. Once Plaintiff filed the lawsuit—even though ADA compliance is a minefield of contradictory guides and resources—as soon as it received Plaintiff's lawsuit, Evolutions Hair took additional measures to make the Website more accessible. In addition to fixing issues identified in the Complaint, the company added an accessibility widget on the Website which allows users to set their preferred accessibility settings and adjust various aspects of the Website to suit their individualize needs. *Id.* ¶ 44. Evolutions Hair is committed to continuing to keep its website up to date and compliant with all applicable standards to make the website as accessible to all as possible. *Id.* ¶ 45.

Because all allegations identified by Plaintiff have been addressed, there is no "live case or controversy," and this case should be dismissed for lack of subject matter jurisdiction. *Makarova*, 201 F.3d 110, 113 (2d. Cir. 2000). In a factually indistinguishable case where a defendant removed access barriers identified by a plaintiff and committed to monitoring of developments in the future to ensure continued compliance, this Court ruled that the mootness

14

requirement was met. *See Diaz v. Kroger Co.*, 2019 WL 2357531, (S.D.N.Y. 2019), at \*5. Similarly, Evolutions Hair has made a similar commitment here. *Bridges Aff.* ¶¶ 46.

As such, the claims raised by Plaintiff are mooted. When the claims are mooted, an actual controversy will not exist, and the case must be dismissed for lack of subject matter jurisdiction. *See, e.g., F.O. v. New York City Dept. of Educ.*, 899 F. Supp. 2d 251, 255 (S.D.N.Y. 2012).

### C.   Plaintiff Fails to State an ADA Claim.

#### 1.   *Plaintiff Does Not Allege that She Requested an Accommodation or Correction of Evolutions Hair's Website Prior to Filing Her Action.*

Plaintiff's ADA claim should be dismissed because the Complaint does not allege that she or her counsel provided Evolutions Hair with notice of the barriers that she allegedly encountered on Evolutions Hair's Website. Nor does it allege that she requested such barriers to be fixed prior to filing suit. The Complaint also does not allege that Evolutions Hair denied any such request, particularly since Plaintiff made no such request and, instead, rushed to file this lawsuit. *Cf. Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447, 451-52 (S.D.N.Y. 2019) (dismissing Title III ADA claim and explaining that "[a] plaintiff's request for a reasonable modification is necessary to determine whether the defendant could reasonably provide such modification and whether the defendant's subsequent failure to do so constitutes discrimination," and the failure to allege such a request rendered plaintiff's allegations "merely conclusory").

#### 2.   *Accommodations Available on Evolutions Hair's Website Vitiate Plaintiff's Complaints About Access.*

For all the reasons discussed in Section I.A and I.B, Plaintiff's claim that her failure to complete a purchase was caused by the Website' inaccessibility is simply not credible. However, even if this Court were to hold otherwise, it should still dismiss her Complaint for failure to state a claim. The Complaint rests on the premise that blind and visually impaired persons are unable to

fully access the Website, and the information contained thereon if the Website does not conform to WCAG 2.1. *Compl.* ¶ 55. But it is not true that all websites must be designed to be read in full by screen-reading software. Plaintiff ignores the right of a business to choose its own type of ADA accommodation.

Specifically, the regulations implementing the ADA set forth at 28 CFR Sections 36.303 *et seq.*, issued by the Justice Department, provide for the use of auxiliary aids and services that provide effective communication to those with disabilities, without directing any particular aid or service, nor specifically require use of guidelines for websites. Particularly, the U.S. Department of Justice ("DOJ") has acknowledged that entities covered under Title III can choose how they provide individuals with disabilities access to their online offerings. *See DOJ's Guidance on Web Accessibility and the ADA* (Mar. 18, 2022)[1]; Letter dated Sept. 25, 2018 from Stephen E. Boyd, Assistant Attorney General, to the Hon. Ted Budd ("*Budd Letter*"),[2] at 2 ("Absent the adoption of specific technical requirements for websites through rulemaking, public accommodations have flexibility in how to comply…"); 75 Fed. Reg. 43,466 (July 26, 2010) (recognizing staffed telephone line as acceptable alternative access to online offerings).

The Second Circuit has stated that the ADA and the regulations promulgated thereunder require owners of public accommodations to "ensure effective communication with individuals with disabilities." 28. C.F.R. § 36.303(c). *Camarillo v. Carrols Corporation, et al*. 518 F3d 153, 158 (2d Cir. 2008). *Camarillo* does acknowledge that a business is not required to have a particular accommodation (such as large type for a menu), and states that regulations promulgated by the Department of Justice provide that "public accommodation[s] shall furnish appropriate auxiliary

---

[1] *Available at* https://www.ada.gov/resources/web-guidance/ (last visited October 8, 2024).
[2] *Available at* https://www.adatitleiii.com/wp-content/uploads/sites/25/2018/10/DOJ-letter-to-congress.pdf (last visited October 8, 2024).

16

aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c). Id. 157. As has been recently noted by the Second Circuit, the ADA permits a business to provide auxiliary aids and services of their choice. *See Swarovski N. Am. Ltd.*, 36 F.4th 68 at 83 (Lohier, Circuit Judge, concurring, p.18-19).

Even prior to this lawsuit, Evolutions Hair's Website includes several features designed to assist users with specialized needs. The dedicated "Contact Us" page, which appears on the Website's home page provides users three different means of reaching out to Defendant with questions about any of products or services, including any issues with accessibility: a dedicated phone number for calls ("Call Us"), a dedicated phone number for text messages ("Text Us"), and a contact form to "Send Us a Message." *Bridges Aff.* ¶¶ 17-18. Plaintiff has made no allegation regarding the existence of, the quality, or adequacy of Evolutions Hair's text, phone, or contact form options—and she did not use the services. In addition, the Website contains a dedicated chat box that allows users like Plaintiff to connect with a live Virtual Assistant who stands ready 24/7 to answer any of their questions. This chat box pops up on every page of the website prompting users to send a message with any questions. Plaintiff does not allege she attempted to access Defendant's Virtual Assistant. *Id.* ¶ 19.

As such, Plaintiff has suffered no injury-in-fact caused by Evolutions Hair and fails to meet the legal standard that would give subject matter jurisdiction to the Court. Plaintiff ignores the regulations in asserting that WCAG 2.1 is the only means to accommodate her disability. Had Plaintiff truly wished to purchase any product on the Website, a simple chat message to Defendant's standby Virtual Assistant, a text, or a call to the advertised phone number could have answered her questions. WCAG 2.1 compliance is simply not the only means to accommodate Plaintiff's disability, yet Plaintiff's Complaint would have this Court mandate Evolutions Hair's

use of WCAG 2.1 guidelines and web design consultants, etc. (*Compl.* ¶¶ 52, 55) with the insinuation that the same is within the financial reach of small businesses like Evolutions Hair. The Code of Federal Regulations makes no such rule.

## II.    The Court Should Dismiss Plaintiff's New York City Human Rights Law ("NYCHRL") Claims.

As explained above, the federal claim based on alleged violations of the ADA must be dismissed because of lack of subject matter jurisdiction. The Complaint also sets forth additional Causes of Action under the NYCHRL and for declaratory relief. *Compl.* ¶¶ 74-86. The Complaint asserts that the Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367. *Compl.* ¶ 8. If the Court dismisses the ADA claim, these claims should be dismissed as the Court would lack jurisdiction over them.

### A.    Plaintiff's NYCHRL Claims Should Be Dismissed for the Same Reasons the Court Should Dismiss the ADA Claim.

The same legal standards for standing and stating an ADA claim under Rule 12(b)(1) and 12(b)(6) apply to the similar city law-based NYCHRL claim. Thus, the Court should dismiss the NYCHRL claims for the same reasons discussed above related to dismissing the ADA claim. *See, e.g., Mendez*, 2019 U.S. Dist. LEXIS 110640, *9-10 (concluding that NYCHRL claims are governed by same standing requirements as ADA claims and dismissing the NYCHRL claims for lack of standing after dismissing the ADA claim on the same basis); *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184, n.3 (2d Cir. 2006) ("a [New York] state-law disability-discrimination claim . . . survives or fails on the same basis as [plaintiff's] ADA claim").

### B.    The Court Should Decline to Exercise Supplemental Jurisdiction Over, and Dismiss, Plaintiff's NYCHRL Claims.

"The district court [] may decline to exercise supplemental jurisdiction over a claim . . . [once] the district court has dismissed all claims over which it has original jurisdiction[.]" 28

18

U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, n.7 (1988). Thus, courts in the Second Circuit quite commonly dismiss NYSHRL and NYCHRL claims after dismissing the federal ADA claim. *See, e.g., Jaquez v. Aqua Carpatica USA, Inc.,* No. 20 CV 8487 (ALC), 2021 WL 3727094, at *7 (S.D.N.Y. Aug. 20, 2021) (declining to exercise jurisdiction and therefore dismissing NYCHRL claim after dismissing the visually-impaired plaintiff's ADA claim for lack of standing at the outset of the case); *Phillips*, 2017 U.S. Dist. LEXIS 75154, *3, 9-10 (holding the same).

Therefore, the Court should decline to exercise supplemental jurisdiction over, and dismiss, the NYCHRL claims.

### C.    Plaintiff's NYCHRL Claims Should Be Dismissed for Failure to State a Claim Insofar as They Seek Civil Penalties and Punitive Damages.

If the Court finds that Plaintiff has standing, or that exercising supplemental jurisdiction may be warranted, the Court should still dismiss the NYCHRL claims, in part, because Plaintiff has failed to state a claim for several forms of relief under the NYCHRL.

The civil penalties and fines that Plaintiff seeks (*Compl.* ¶ 84) are not recoverable by her under the NYCHRL. Thus, the demand for such relief should be dismissed. *See* N.Y.C. Admin. Code, tit. 8, Ch. 1, § 8-127(a) ("Any civil penalties recovered pursuant to this chapter *shall be paid into the general fund of the city*."); N.Y. Exec. L. § 297(4)(c) (vi) ("assessing civil fines and penalties, in an amount not to exceed fifty thousand dollars, *to be paid to the state* by a respondent") (emphasis added).

19

A defendant must have "engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard'" to be liable for punitive damages under the NYCHRL. *Chauca v. Abraham*, 30 N.Y.3d 325, 334 (2017) (quoting *Home Ins. Co. v. American Home Prods. Corp*., 75 N.Y.2d 196, 203-204 (1990)). Plaintiff does not allege any non-conclusory facts that could warrant punitive damages, and the demand for such relief should be dismissed.

## III.    The Court Should Dismiss Plaintiff's Claim for Declaratory Relief.

Plaintiff asserts a claim for declaratory relief and seeks a declaration that "Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind;" *Compl.* Prayer for Relief ¶ (c). The claim for declaratory relief should be dismissed for the reasons set forth above, and also because it is duplicative of Plaintiff's other claims and would serve no purpose. *See, e.g., Cole Haan LLC,* 2021 WL 849434, at *5 (S.D.N.Y. 2021) (dismissing blind and visually-impaired plaintiff's ADA, NYSHRL and NYCHRL claims for lack of standing and failure to state a claim and dismissing claim for declaratory relief as "duplicative of his other claims"); *MS Fed. Acquisition, LLC v. U.S. Bank Nat'l Ass'n*, , 2015 U.S. Dist. LEXIS 95152, *20 (S.D.N.Y. 2015) (dismissing claim for declaratory relief under Rule 12(b)(6) because "the declaratory relief sought by the Plaintiffs would not serve a useful purpose in clarifying or settling the legal issues involved in this case" since those legal issues would be "resolved by litigation of the breach of contract claims" the court did not dismiss. *See also Suris v. Crutchfield New Media, LLC*, 2023 WL 3792512, at *4 (E.D.N.Y. 2023).

## IV.    Plaintiff's Claims Should Be Equitably Barred.

To be entitled to injunctive relief—the only remedy available to Plaintiff under the ADA—an ADA plaintiff must show that she indeed faces a genuine threat of discrimination. But the facts

and circumstances in this case—as detailed in Section I-II above—establish the contrary. Plaintiff's failure to inform Evolutions Hair of any alleged accessibility issues prior to filing suit, and her refusal to identify exactly what accessibility barrier Evolutions Hair could remove for her, establish that Plaintiff does not face any threat of future discrimination.[3] For this additional reason, this Court should conclude that Plaintiff is equitably barred from maintaining this lawsuit.

"The essence of equity jurisdiction has been the power . . . to do equity and to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U. S. 321, 329 (1944). "Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs." *Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294, 300 (1955). When a decision is "rooted in equity," it turns on "the conditions and circumstances of the particular case." *Azar v. Garza*, 584 U.S. 726, 729 (2018) (citing cases). Most recently, in *Harrow v. Department of Defense*, 601 U.S. __ (May 16, 2024), the Supreme Court unanimously held that courts' expansive equitable powers can be applied to toll a statutorily prescribed filing deadline even where the applicable statute phrases the deadline in mandatory terms. In *Starbucks Corp. v. McKinney, et al.*, 602 U.S. __ (2024), the Supreme Court further mandated that Courts weigh general equitable principles when injunctive relief is authorized within a general statutory scheme.

A balancing of the equities includes many factors. Examples include the economic burden on small businesses and the degree of precision the ADA requires, as well as alternatives persons with disabilities may possess. *Starbucks*, *supra*, provides Courts with broad flexibility to determine

---

[3] The Complaint's demonstrably false allegation about an attempt to "complete a purchase" of a product that is shown to have not even been viewed by anyone further discloses a lack of genuine intent to return and thus no real threat of discrimination.

whether a statutory remedial framework is being abused when the sole statutory remedy is equitable relief.

In a website accessibility case like the present one, a district court in California recently applied similar equitable principles. The defendant in that case advanced the equity-based affirmative defense of lack of a pre-suit demand. The plaintiff sought to have the defense stricken, in part because the ADA does not expressly require plaintiff to make a pre-suit demand:

> …as explained by Defendant, "the defense is not that Plaintiff failed to make a required pre-suit demand—it is that Plaintiff unreasonably delayed in bringing this lawsuit. The fact that Plaintiff failed to make a pre-suit demand is one fact that shows, together with the other circumstances alleged, her delay has caused prejudice to Defendant, and there, the claims should be equitably barred.

*Brooks v. Vitamin World USA Corp.*, 2021 U.S. Dist. LEXIS 197857, \*6-7 (E.D. Cal. 2021). The court disagreed with the plaintiff and declined to strike the equitable defense.

Given that the only relief available under the ADA is equitable in nature, Evolutions Hair specifically requests that the Court enter an order requiring a plaintiff to provide a defendant who has attempted to comply with the ADA a pre-suit notice of her potential claim (that a website fails to comply with the ADA) before filing a lawsuit. Such a holding would strengthen the effectiveness of the ADA because it would incentivize compliance, as opposed to the current framework, which encourages litigation.

## CONCLUSION

Plaintiff's Complaint is fatally flawed in multiple respects, and therefore, complete dismissal is warranted. It fails to plausibly allege both the concrete injury-in-fact and threat of future injury that are both required to create a necessary case or controversy. Thus, Plaintiff lacks standing to sue under the ADA. Further, the Complaint is mooted by Evolutions Hair's actions to completely address the alleged violations of the ADA on Evolution Hair's website. Even if

Plaintiff has standing, the Complaint fails to state a claim under the ADA and the New York City Human Rights Law. Finally, sound equitable principles should bar Plaintiff from maintaining this lawsuit. For all these reasons, the Complaint should be dismissed in its entirety.

THOMPSON & SKRABANEK, PLLC

By:  _____

J.R. Skrabanek
515 Madison Avenue, 31st Floor
New York, NY 10022
Tel: (646) 568-4280
jrs@ts-firm.com

ATTORNEYS FOR EVOLUTIONS HAIR SALON, LLC

23