**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ANGELA WAHAB, on behalf of herself and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>EVOLUTIONS HAIR SALON, LLC,<br><br>*Defendant.* | Civil Action No. 1:23-cv-06557-KPF<br><br>**DECLARATION OF ALLISON BRIDGES** |

STATE OF NEW YORK        )
                         ) ss.
COUNTY OF SUFFOLK        )

I, Allison Bridges, being duly sworn, depose and say that:

## Introduction & Personal Background

1.      I am the owner of Evolutions Hair Salon, LLC d/b/a Curl Evolutions ("Defendant" or "Evolutions Hair"), a position that I have held for more than 18 years.

2.      I respectfully submit this Affidavit in support of Evolutions Hair's motion to dismiss this action, and to share with the Court Evolutions Hair's commitment to ensuring access to its website to all users, including those with various disabilities.

3.      I am based in Babylon, New York.

4.      I have been working in the hair industry since I was 16 years old. In 1999, I obtained a cosmetology license and started working at a hair salon in Manhattan.

5.      Based on my experience working with clients who have curly hair, I came to understand the special needs and requirements of caring for curly hair, including the dearth of knowledge among hair stylists about the products and styling techniques most suitable for this hair texture.

1

6.      For this reason, I taught myself as much as I could about this type of hair care and decided to specialize in services and products tailored for different types of curly hair.

7.      After working for several hair salons across New York state, in 2006, I purchased Evolutions Hair (then known as Hair Port) from its previous owners and opened my own salon.

8.      Evolutions Hair is incorporated in the State of New York.

**Background on Evolutions Hair and Our Commitment to Accessibility**

9.      Today, Evolutions Hair offers a variety of hair care services including haircuts and styling to clients of all backgrounds. We are located at 233 East Main Street, Babylon New York.

10.     We also offer clients a selection of hair products and tools for purchase through our website. However, a vast majority of product sales take place at our physical salon by clients who use its salon services.

11.     Even though Evolutions Hair is a small business, we take pride in providing quality products to customers at a fair price, and we continually strive to give our customers a pleasant salon experience.

12.     Evolutions Hair has always been committed to accessibility and inclusion of all. Our salon is designed to be accessible to people of all abilities. We avail people with physical disabilities a reserved parking space, and the entrance to our salon does not have stairs.

13.     We also have different protocols intended to make sure that people with disabilities have a pleasant experience once they are in our salon. For instance, we offer special chairs for people with different physical needs, have designated areas for wheelchair users and for clients who require privacy for religious reasons.

**Background on Evolutions Hair's Website**

14.     Our commitment to accessibility also runs through the ways we maintain our website.

15. In 2016, we hired an experienced Information Technology company called Flexible Systems to develop a new website for us, the version that is currently in use.

16. We also contracted with this company to provide monthly monitoring of the Website, not only to make sure that it functions properly but also to ensure the security of customers' data.

17. In addition to comprehensive information about services and professionals, the Website has several features designed to assist users with specialized needs.

18. Our dedicated "Contact Us" page, which appears on the home page itself provides users three different means of reaching out to us with questions about any of our products, including any issues with accessibility: a dedicated phone number for calls ("Call Us"), a dedicated phone number for text messages ("Text Us"), and a contact form to "Send Us a Message."

19. In addition, the website contains a dedicated chat box that allows users to connect with a live Virtual Assistant who stands ready to answer any of their questions. This chat box pops up on every page of the website prompting users to send a message with any questions.

20. The traffic on our site, in general, is very low. We engage virtually no paid advertising for the site. For this reason, we can track specific users and site access instances with relative ease.

### My Knowledge of this Lawsuit

21. Prior to this lawsuit, I did not know of specific guidelines on how to make a accessible. However, when I hired the company that created the website, I intended for the website to be accessible to everyone and believed that any user having technical issues could navigate the site to our contact page if necessary.

22. Although the website includes contact information which directs potential customers to contact us with any questions, neither Ms. Wahab nor her counsel ever contacted Evolutions Hair with any inquiries about any supposed difficulties in making a purchase on the website.

23.     On May 20, 2024, the date when Plaintiff claims to have attempted to purchase an item from the website, the website's Virtual Assistant was on standby ready to assist any user but did not receive any such requests.

24.     No one contacted me prior to the filing of this lawsuit to inform me that the Website was allegedly not compliant with the Americans with Disabilities Act (ADA).

25.     I never received any letters, emails, calls, voicemails, text messages, or social media inquiries regarding accessibility issues or threatening to file a lawsuit against us in connection with the accessibility of the Website.

26.     In our 8 years of operating the website, no one has ever expressed any issues navigating our site or using a screen reader. I cannot think of a single instance in which someone reached out to tell us that they had difficulty purchasing a product from us because of an accessibility issue.

27.     The fact that I was paying a third-party IT company a monthly fee of $350 to monitor the functionality of the website, and because the website is linked to a Virtual Assistant—an individual whose sole and primary duty is to review and address inquiries from our website users 24/7—made me believe that the website is accessible to all users.

28.     Given that we have regular monitoring of the Website by a professional vendor and never heard of any issues with its performance prior to this suit, I believed—and still believe today—that the Website provides a shopping experience with no barriers and allows customers to conduct business with us using assistive technology such as a screen reader.

### **Knowledge of Plaintiff**

29.     Since this lawsuit was filed, I have learned that the Plaintiff, Ms. Wahab, is what may be described as a "serial litigant" who targets websites operated by small businesses like ours. In fact,

I have learned that Ms. Wahab is a plaintiff in approximately 67 ADA website lawsuits in just the Southern District of New York alone since the middle of 2023.

30.     I suspect that a detailed review of all 67 complaints would reveal a "cut and paste" style of similar allegations to the allegations against Evolutions Hair with very little detail supporting the actual allegations, as I believe has occurred here.

**Provably False Allegations Regarding Accessing
<u>Evolutions Hair's Website in the Complaint</u>**

31.     The Complaint repeatedly alleges that Plaintiff attempted to but was stifled from purchasing a particular item on a particular date.

32.     The item in question is a Olaplex Shampoo available at the following <u>web address</u> and appearing as follows:



33.    The item was allegedly attempted to be purchased by Plaintiff on May 20, 2024, according to her. *See Complaint* ¶¶ 20, 24.

34.    But, critically, our records show that this item was not even **viewed**—let alone attempted to be purchased—by anyone on the date in question:



35.    The above screenshot is stored in Evolutions Hair's records and was: a) made at or near the time in question; b) kept in the ordinary course of business; and c) making the record was a regular practice of the business.

36.    As will be explained further immediately below, the above screenshot shows that between May 19 and May 31, 2024, there were only 3 unique visitors of the page in total. The chart further shows that there was **no user** who viewed the page on May 20, 2024, the date that Ms. Wahab alleges that she attempted to but was unable to purchase the Olaplex Shampoo.

37.    In contrast, the chart shows that on May 21, 2024, there were two users who visited the page. Both such visits were from Moldova, outside the United States. The record also shows that one user viewed the page from the United States, on May 27, 2024.

38.     The above record therefore shows that no one viewed the page containing the Olaplex Shampoo on May 20, 2024, contradicting Plaintiff's claim that she attempted **to complete a purchase** of that item on our website on that date.

39.     Also, Plaintiff claims that she attempted to purchase Olaplex Shampoo "because she was looking for a high-quality shampoo specifically designed to repair and maintain curly hair." *Compl.* ¶ 22.

40.     However, this product is not "specifically designed" for curly hair. It is a highly popular shampoo that is widely marketed to and used by people of all types of hair. This popular shampoo is not a product of Evolutions Hair. And Evolutions Hair has never identified or advertised this product as being "specifically designed" for curly hair. In any case, this shampoo is commonly sold at most salons and online hair care shops.

41.     According to Evolutions Hair's records, quite literally the **only** unique, non- "copy and paste" style fact in Plaintiff's **entire** complaint is demonstrably false.

### Evolutions Hair's Continued Commitment to Accessibility

42.     Evolutions Hair has always made a good faith effort to provide an accessible website, and it will continue to do so.

43.     Once Plaintiff filed this lawsuit, we contacted our web developer to conduct a thorough review of the website. Our developer has since audited the website's general compliance and made sure that all such deficiencies alleged in the Complaint have been remedied and that no such barriers to access, as alleged, still exist with https://www.curlevolution.com/.

44.     Since the filing of this lawsuit, we have also added an accessibility widget on our website which allows users to set their preferred accessibility settings and adjust various aspects of the Website to suit their individualize needs.

45.    Evolutions Hair is committed to continuing to keep its website up to date and compliant with all applicable standards to make the website as accessible to all as possible.

46.    Evolutions Hair does not intend to let its website fall behind the current standards and will continue to keep the website up to date with any new standards because it does not wish to be involved in any further, unnecessary litigation and because of its commitment to being accessible to as many of its patrons, and as much of the public, as possible.

## Conclusion

47.    I founded Evolutions Hair with the goal of providing quality hair care and expertise that addresses the unique needs of people with curly hair.

48.    I have always intended for our salon to be accessible to everyone who is interested in our services and accommodated clients' individualized needs.

49.    It would have been substantially easier for Ms. Wahab or her counsel to have contacted us prior to the filing of this lawsuit, and we would have been glad to accommodate them, and, if they were able to prove any specific deficiencies with the site, we would have worked with them to remedy same. Instead, they made no effort at all to contact us. We also would have been glad to work with them to complete any purported purchase of any product sold on our website.

50.    Ultimately, given all the circumstances of this dispute, from the erroneous factual assertions in the Complaint, to Plaintiff's serial filing history, I find it very difficult to believe that Plaintiff actually accessed our website on May 20, 2024 to legitimately attempt to purchase any products from us.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 7, 2024

DocuSigned by:

_____
C6243C1517E04E6...
Allison Bridges

8